on behalf of the appellant Tory Starr. They had the police officer, they had the surveillance video, that were necessary to support the cross-reference that probation recommended. Why can't the findings be inferred by the record? I mean, we got the record here, we have the video. And didn't we say in United States v. Daniels that if the court fails to make individualized findings regarding the scope of a defendant's activities, that's not ground for vacating a sentence if the record supports the determination with respect to the offense conduct? Your Honor, Gall v. United States says that the district court needs to correctly calculate the guidelines in the first instance. Even if the record supports the sentence, the court needs to make the findings that support the cross-reference. We can't go and look and see that the findings are inferred from the record? We can't do that? Doesn't our precedent say we can do that? Your Honor, I think that in this case, if the court were to do that, what it would be doing is making the findings in the first instance. Because the district court... Well, not making the findings in the first instance, but the findings are inferred. The district court... When the district court pronounced her reasons for imposing the cross-reference, the judge was clearly under the impression that a gun had been found and that Mr. Starr was charged with possessing a gun. And so when the AFPD, Mr. Natale, objected and said, Your Honor, there's no gun in this case, so no gun was found, the judge didn't go back and re-examine the record and see whether the ammunition that Mr. Starr was actually charged with possessing, in fact, was used in connection with, as the law requires... It's clear he possessed a gun. He possessed one gun and possessed one caliber of ammunition. And he possessed both of them at the same time. Isn't that clear? I think the surveillance video could be more clear, and I think what I think doesn't matter, because I'm not a federal district judge, I think the district judge needed to make those findings, and they're not in the record. And I think for this court to make the findings, while in this case might not make any difference, if cases like Mock, where this court remanded for the exact same reason on a very similar record, are necessary to ensure that in cases where the evidence is less clear, the right standards are applied. In other words, even if this case is likely going to end up in the same result, that is no reason for relaxing the standards that apply to every case. And so I think because the district court was clearly confused and did not make the finding that... But didn't say that the ammunition is enough. In other words, they pointed out to her that there was no gun, and she said, well, the ammunition is enough anyway. Your Honor, that's not exactly what the court said. The court said, I think there's enough. I think there's enough. And so it's not clear what she was referring to. And Mr. Natale then began to say, Your Honor, we don't know if that ammunition is the same caliber ammunition. And then she cut him off and said, I think there's enough. Can we proceed now? And so the record clearly shows that the district court didn't make the finding on it in connection with, and didn't find a specific intent to commit murder, which is also required as Mock holds. And part of the reason for that, I think, is because the government, in its response to the objections to the PSI... I thought he confessed. Sorry, Judge? Didn't he say he was trying to kill Officer Blanco because he was tired of being harassed by Hispanic officers? Why isn't that enough? That is not in the record, Your Honor. That is in the government's memo. Well, it's in the PSI, isn't it? Well, the PSI is disputed. Well, but let's start with that. Was the objection, the objection which is to paragraph 2 to 14 or something, is that sort of a shotgun objection? In other words, is that specific enough to put the district court on notice of what it was that was disputed, put the government on notice so they could bring witnesses in? Your Honor, all the cases that the government cited for the idea that that's not enough, in fact, don't hold that. All those cases say that it is enough for the defendant to identify the paragraphs of the PSI. But he didn't identify the paragraphs. He said all the paragraphs. All the paragraphs about factual allegations, which was only a handful. It wasn't the entire PSI. But, Your Honor, I would submit that even if the defendant did object to the entire PSI, that's enough, because the burden of proof in a criminal case is always on the government, and it doesn't do anybody any good for the government to just count on probation to recite allegations and then force the defendant to make admissions. Yeah, but the question is, is it specific enough? Your Honor, that's another way of asking, shouldn't your client have to make the sort of admissions that a civil defendant makes in a civil case? In other words, in a civil case, the defendant has to admit or deny the allegations of the complaint. And it's considered bad faith, if not borderline unethical, to make frivolous denials in a civil case. But in a criminal case, there is no such obligation. A defendant doesn't have to admit anything. The defendant has a Fifth Amendment right to deny everything, blanketly, if he so chooses, and to hold otherwise would be to unconstitutionally shift the burden of proof from the government to the defendant, because then the government could do what they did in this case. There's nothing in the factual proffer about all the facts on which that enhancement relies. If they wanted to make this case an open and shut case, all they had to do was, instead of the paragraph 6 they have in their factual proffer, which says, and there are some other facts that we know about, but we're not going to put them in the factual proffer, they could have put all those facts in the factual proffer. And then if Mr. Starr had pled guilty anyway, he wouldn't have been surprised that he got the statutory max after waiving his right to trial, and he might not have insisted on appealing this case. But as it happened, we don't know when the government turned over the video. Maybe it was before, maybe it was after the plea. That's not in the record. But what about the line of cases in the circuit that requires, in fact, the wording is specifically characterization. It has to be specific with clarity. You're saying, basically, that that's unconstitutional. Your Honor, that requires the defendant to admit... No, I understand what you're saying, but is that your point? That's my point, Your Honor. That we disregard that line of cases because it is unconstitutional. I think that the cases the government cited, which are addressed by the department, say very clearly that if you identify the paragraphs you object to, that's enough, I think that's the law, and I think that's perfectly constitutional. And I think going any further than that which they're not. My time is up, Your Honor. Thank you. All right. Well, it wasn't up, but we have your argument, and you've reserved some time for rebuttal. Thank you. We'll hear from the government. Mr. Marcet. May it please the Court, Daniel Marcet on behalf of the United States. Judge Verbrano said it perfectly, a shotgun objection. The paragraphs 3 through 12 were the entire factual conduct in the PSI, and in one sentence, the defendant disputed their completeness and accuracy. Then at the hearing, in spite of being offered numerous attempts to elaborate on those objections to say something further, the only objection, the only arguments made related to the in connection with enhancement, which is a separate factual issue to did the defendant fire the gun? Did he point the gun at the officer? Did he say he intended to kill the officer after his arrest? Did he intend to kill the officer when he fired that gun? Those facts weren't in dispute at the sentencing, and so at this point to fault the district judge for not making the fact... What is the connection between the ammunition in the car and the gun in the store? Sure, Your Honor. Well, I think the connection is that it facilitated or had the potential of facilitating the offense. We don't know even the caliber of the gun in the store. Your Honor, what we do know is that he had a gun in the store. That's clear from the surveillance video that he fired that gun and that he was not seen... Well, I'm not sure it's clear that he fired the gun. It's clear that there's a puff of smoke, but it's not clear, upon my review of it anyway, where the puff comes from.  or it could have come from the officer's gun shooting and causing the glass to break or going into something in the aisle there. I mean, it's not really clear that he shot the gun, I don't think, from the video. I don't want to get too much into the details of the video. It seems to me in the video, around 20 seconds, he points the gun and he recoils as the smoke is coming off. It seems to me that's what happened. But to find clear error here, based on Judge Ungaro's implicit finding that he shot the gun, is, I think, unreasonable. Clear error is her factual finding objectively unreasonable. Could no reasonable person determine that gun was fired based on the video? It seems to me that the gun was fired based on what looks like smoke coming off the barrel, and I think that's sufficient to support her finding, which is implicit in her finding that he did attempt to kill the officer. I thought from reading the government's brief that the government concedes that there were no factual findings by the district court. There were no specifically delineated factual findings. That's required. Your Honor, I believe the law in the circuit is it's required of the district judges on notice that the facts are in dispute. Otherwise, it's reviewed for plain error. And here, with a video that, again, appears to show him pointing a gun at an officer in a convenience store full of small children, people diving to the floor as shots are fired, and as I see it, him firing a shot, I don't think it was plain error to not narrate what was in the video. If the PSI is out, if the objections were sufficient, what are the facts that would connect the ammunition to the gun, and what are the facts that would warrant a finding of intent to kill? So first, as to the facts that would warrant the connection of the ammunition to the gun, so I think first is the fact that from the video, it's clear it's a small revolver, and that was also the testimony of the officer in court. The factual proffer that was signed and agreed to by the parties makes clear that the defendant fled directly from the convenience store into his car. He then was stopped a short time later. It's not exact in the factual proffer, but it's made clear that's all a common course of conduct, and again, the 2K2.1C cross-reference directs you to relevant conduct to examine whether it is the same course of conduct. So in that flight, he enters the car, and then ultimately in the car, there's .22-caliber ammunition found both right near where he was sitting in plain view and also in the trunk, and it's all .22-caliber ammunition. There's no other kind of ammunition, and there's no gun recovered to suggest that he had a different gun than the one he shot in. So under the... A lot of inferences we're making. Well, Your Honor, I think they're all fair inferences, and given the district court's finding ultimately that there wasn't enough... Yeah, so the court could have specifically made those findings, but it didn't in this case, right? Well, so I guess this is where I disagree with the defense. And, I mean, it's a strange case. The officer originally said, he fired the gun at me, then he changed his mind, and he says, I don't remember. Well, Your Honor, if you see the video, it was a frantic situation. I could imagine a .22-caliber revolver would not have been hurt in that chaos. Why would the officer change his mind and say, well, I don't remember whether he fired the gun or not? And then the district court seemed to be a little confused because she says shots were fired. And so she doesn't say, star fired the shots. She said shots were fired. I understand, Your Honor. That concerns me a little bit. Well, Judge Ungaro has been a district judge for I don't know how many years, over 20. I can't imagine she would... I mean, I think we have to give her some common sense here. She would not have found that he attempted to murder someone if she hadn't viewed that video as firing. She's been on the bench for a long time. She could have said star fired the shots if he didn't say that. Your Honor, she could have, I think, given what the video shows, and I guess Judge Rosenbaum and I are in a bit of a different view of that. As I said, I don't... Just to be clear, I don't think... It's clear to me that some shots were fired. It's not clear to me where they come from. It's clear to me that he had a gun. I just can't tell from looking at the video, and I watched it multiple times. I stopped it, trying to see where the smoke was coming from. I don't think that it's possible to discern whether he actually fired shots. Clearly he had the gun. Well, and I think it's necessary to infer from Judge Ungaro's factual finding that there was enough to apply the attempted murder cross-reference that the smoke was coming off of that barrel. And again, I think, Your Honor, as you said, if you can't tell, it can't be clear error. That was Judge Ungaro's implicit factual finding, because no district judge of 20 years is going to find that he attempted to murder him without firing a shot. But we don't... I mean, we don't decide whether to affirm or reverse or what the law is based on how long a judge has been on the bench. I understand, Your Honor. It just... To me, it's... She would not have applied the cross-reference. No judge would have, because there would be no facts to support the attempted murder unless there was a shot fired, because there is the substantial step requirement. Had the shot not been fired, maybe there would have been a different cross-reference applicable, but it wouldn't have been attempted murder. So in this case, by applying the cross-reference, with or without the PSI, Judge Ungaro viewed the video, she listened to the officer, and the officer couldn't remember whether shots were fired, but she concluded necessarily that shots were fired, and that's a very reasonable determination based on the video. I'm curious now. He was charged... He was just charged with possession of ammunition by a convicted felon, but by cross-referencing the guidelines for attempted murder, he's looking at 120 months, and could the government have charged him with attempted murder? Seems like that's an end-around. You charge him with possession of ammunition, he's sentenced for attempted murder. Could the government have charged him with attempted murder? I'm not aware of a federal statute that would criminalize the killing of a state law enforcement officer. There may be one, but I don't... So the answer is no. I don't believe the federal government could have, the state could have, and I don't know if the state did or not. I will note, just for clarity, the reason the gun wasn't charged, and the reason we could not charge a gun in this case, is because without recovering the firearm, there's no interstate... We don't know from what we have in this case in the record whether or not the state charged him with attempted murder? It's not in the record, and I personally don't know. Judge, I believe you had a second part to your question. Did I answer it about the facts showing intent to kill? Well, true. The connection between the ammunition and the gun. Connection between the ammunition and the gun. So, again, there was... In her statement, she said, there's only one gun in this case. That's the gun that's in the video. It's not recovered, and she never said it was recovered. I don't believe she was under the misimpression that it was recovered. And so when there's no gun recovered, but there's a small caliber revolver, it's a small gun, and there's only a single caliber of ammunition, that's in the car that the defendant fled in, that's in plain view in the passenger side next to where he was seated, and then the only other caliber of ammunition in the trunk also is .22 caliber. There's... It's clear that it was possessing connection. I shouldn't say it's clear. I think it's very reasonable to find that it was. An inference would have to be drawn that because he was arrested shortly after the incident, and there was .22 caliber ammunition in the car, you would infer that that ammunition was then connected to the use of the gun inside the store. So I don't know if it's a bridge too far. He was arrested... It was the same car that he used to flee from the store, and I think that's important. And then I think you take the statement... So the PSI is out. I'm granting your assumption. We take the statement that was played in court. The statement that was played in court, that's clip five, shows that he's talking about possessing that ammunition. He's talking about purchasing it. And then he goes into talking about how all he did was defend himself. So he's explaining. He's got that ammunition. He purchased it, and he's got a right to defend himself. To me, it's clear. In his mind, he had that gun. He bought that ammunition to defend himself from what he perceived as harassment by Hispanic officers. And as he says, anything you want to say that I did, you can have a million witnesses, all I did was defend myself. And that's in the same breath that he's talking about purchasing the ammunition that was found in the car. When the officer approached him outside of the store before he ran into the store, was he committing a crime? No, not that I'm aware of. He was minding his own business, and now he's looking at 10 years in prison. Your Honor, with respect, an officer approaching someone legitimately or not, in the facts of this case, as the officer testified, it was a narcotics trafficking area, and he approached someone who was loitering in front of the store. It's not license to shoot at the officer. You can walk away, you can do all of that, but once you pull a gun on an officer... But he was charged with possession of ammunition by a convicted fellow. That's correct, Your Honor. That's what the government charged him with. He's not charged with firing at the officer. No, that's correct, Your Honor. But precedent going back before the sentencing guidelines was... What about U.S. v. Mock that was cited by counsel? That's a guideline attempted murder which was sent back for a specific finding to cause death or serious bodily injury. Shouldn't it be sent back for that finding? No, Judge, thank you for reminding me. Mock is an arson case. It was a case where someone lit a large fire, and the district judge, with no evidence of any... possible risk of harm or anything like that, concluded, presumably based solely on the fact that it was a large fire... Shouldn't that happen here? Maybe send it back and the judge would make her own findings and the record would be clear for appellate purposes. We don't really know what was in her mind. Well, Your Honor, I think as Judge Wilson said, we have the video. That's what's very different here. There was evidence presented and that evidence, if not clearly, at least reasonably shows this man pointing a gun from across the convenience store. It doesn't clearly show that he fired that gun. In fact, it seems to me like the district court is even unclear as to whether or not he fired the gun. Otherwise, she would not have said in her order, shots were fired. Rather than he fired the gun. If she had said that in her order, then that would be a finding of fact. I think that we would apply a clearly erroneous standard of review because we can look at the video and see the gun and he was pointing it and all that. But she was a little unclear because she said shots were fired. She didn't say Starr fired the gun number one. And number two, the officer changed his mind. He says, he fired at me then later he says, I don't remember whether he fired at me or not. Your Honor, I guess this is another strike against the passive voice. It's not yeah, I agree she should have said Starr fired shots at me. Again, I don't think there's any question that that's what the finding was. Because the guideline was not pointing a gun at someone. The guideline was the attempted murder guideline. That required a substantial step. It's plain that that had to be the implicit finding. That the gun was fired and it was fired by Mr. Starr as well as the officer admitted by him. And again, I don't know the court's view on the waiver's argument. To me, if this was a sufficient objection to put the court and the United States on notice to bring the witness who heard the spontaneous statement in the car that I was intending to kill the officer when I fired those shots to bring in other officers who arrested the defendant to testify about the time that it took to let the court know to schedule an hour, two hours for this hearing then there is no burden on the defense to state with specificity and clarity. And defendants will take two bites at the apple. They'll go in once see what sentence they get and they'll come up here and re-litigate factual issues. He admitted the facts in the pre-sentence investigation report but he clearly and specifically objected to the his lawyer says, the nexus between the ammunition. He objected to that. Absolutely, your honor. And I'm arguing that's a separate factual issue from the intent to kill and the substantial step. The in-connection with his remote to that is my understanding. There's three factual issues here and I'm arguing the first two we can take the undisputed facts in the PSI and addressing them. Thank you. Thank you. Counsel, we'll hear from Mr. Bosquos. So, I think that I want to take the focus off of Judge Engarro because I don't think that's the issue. I think what happened here and why this case is important is that the U.S. Attorney's Office in their response to the objections to the PSI failed to lay out the elements for the judge of the findings the judge was required to make. If they wanted this enhancement, if they wanted this cross-reference, it was their burden to help the judge by laying out. You have to find connection, you have to find specific intent, you have to find all these things that he attempted to kill the officer and they didn't do that. So, Judge Engarro did what she thought she needed to do but that was error and it was clear error. So, it isn't because of Judge Engarro, it's because the government did not meet its burden. That's what this case is about. The government could have easily, easily made this case open and shut by just putting the required information in the factual proffer and explaining to Mr. Starr your exposure is to these facts. And then Mr. Starr, most likely, would have invoked his right to trial because he would know he's looking at the statutory maximum. And then, yes, the government has to bring witnesses to court and prove its case because that's our system. It is not some crime against the Republic for a defendant to insist that the government meet its burdens. And so, unfortunately, even though we all suspect... I mean, the government did not have to put in all of the facts that supported the enhancements in the factual proffer at the plea. I mean, they didn't have to do that. They did have to prove it at the sentencing hearing though. Yes, Your Honor. They didn't have to do it, but if they had, this case would be much easier because then Mr. Starr... But why should we argue about that? Because we're in agreement, are we not, that it was perfectly legal for the government not to put those facts in so long as it proved it at the sentencing hearing. Only because it explains what likely happened in this case. That's the only reason it's relevant. And why the government's contention that this somehow gives defendants two bites at the apple is wrong. Mr. Starr insists on appealing because he was surprised that he got the statutory max. If he hadn't been surprised by that, if he knew at the change of plea, then you go to trial, whatever happens happens, and, you know, you take your lumps. But in this case, he pled guilty. We don't know what he pled guilty to. I understand you're making a fairness argument. I'm just saying, Your Honor, there's not two bites at the apple here, is all I'm saying. This was, Mr. Starr pled guilty, as the court mentioned, to possession of ammunition. And he expected certain guidelines, I assume, since we're here, because Mr. Starr insists on appealing, so we're all here. He expected something and he got much more. The government could have managed those expectations if it wanted to, that's all I'm saying. And if it didn't, then, yes, they needed to bring witnesses to the sentencing hearing and prove up the enhancement there. But this is not Judge Incaro's fault. Judge Incaro did what the government asked her to do. So, on remand, what directions are you suggesting the district court should be given that she hold a resentencing hearing and make findings to in connection and intend to kill and will have a different record on review? Yes, and if there's a second review, which, if the findings are made, then I'm not sure that there will be. But the point is that, even though we're all, and certainly Judge Rosenbaum, she's watched the video as many times as she has, we all know that Judge Incaro will likely make the same findings again. But the reason this case is important anyway is because this case is, has a ton of evidence that was not properly presented and could create very bad law for cases where there's less evidence. And so we have to uphold mock, uphold that the correct findings have to be made in every case so that things like this don't happen and defendants aren't unfairly surprised when they get a statutory max. It's a good case. The problem is whether or not the government was on notice that it should have done all those things. Well, Your Honor, the government was asking for the enhancement. So they're on notice of what the elements are, and they need to do research and present whatever evidence will entitle them to the enhancement. That's how it works. In any event, I submit that if a judge on the Court of Appeals needs to watch the video over and over again to figure out what happened, then this isn't the clear case that the government contends it is. And we do need findings, and we do need a specific intent finding. As for the confession, if the government wanted to rely on that, they could have put all of that information from the videotaped confession in the factual proffer. In other words, this is a case where the government failed to meet its burden, even though it was not difficult for it to do so. They had the police officer there. They had the videotape ready to go. They knew the facts were contested. This is not a plain error case. They didn't show up to court surprised that there was going to be a factual dispute. They knew. They were prepared. And they brought what they thought they needed. But they failed to put on the record the facts and the findings that would support their enhancement. And that is on them as much as on the district court judge. So I don't think that it's a rule of decision that we take a look at a record that doesn't have any of the requisite findings and say, well, Judge Angaro's been a judge for a long time and she must have thought the right things even if they're not on paper. I think the burden was on the government to do whatever it thought it needed to do to get whatever sentence it thought justice required. And they have failed to do that in this case. Thank you, Your Honors. Thank you, Counsel.